IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY NATIONAL BANK,<br><br>     Plaintiff,<br><br> -against-<br><br>BANCO DEL ESTADO DE CHILE,<br>DONNELLY MECHANICAL CORPORATION,<br><br>     Defendants. | **Civil Action No**._____ |

Plaintiff CITY NATIONAL BANK ("CNB" or "Plaintiff"), by and through its attorneys, Davis+Gilbert LLP, for its Complaint against Defendants BANCO DEL ESTADO DE CHILE ("Banco") and DONNELLY MECHANICAL CORPORATION ("Donnelly") (collectively, "Defendants") asserts the following:

### NATURE OF THE ACTION

1. This action concerns damages caused by Defendants' negligence in connection with a significant water leak in the premises leased by CNB (the "Premises") that is located in the commercial building owned by Park Avenue 400 Partnership (c/o RFR Holding LLC) ("Landlord") at 400 Park Avenue, New York, New York (the "Building"). The damages caused in the Premises as a result of Defendants' negligence total at least approximately $2.2 million, an exact amount to be determined at trial.

### THE PARTIES

2. Plaintiff CNB is a citizen of the State of California. CNB is incorporated in the State of California, with its principal place of business located at 350 South Grand Avenue, 7th Floor, Los Angeles, CA 90071.

1

3.  Upon information and belief, Defendant Banco is a citizen of the Republic of Chile. Upon information and belief, Banco is incorporated in the Republic of Chile, is wholly controlled and operated by the Republic of Chile, and has as its headquarters Av. Libertador Bernardo O'Higgins 1111, Piso 6, Santiago, Chile. Banco has a branch location at 400 Park Avenue, New York, New York, 10022.

4.  Upon information and belief, Defendant Donnelly is a citizen of the State of New York. Upon information and belief, Donnelly is a New York corporation with its principal place of business located at 596-29 222nd Street, Queens Village, New York 11429.

## JURISDICTION AND VENUE

5.  Jurisdiction is proper in this Court and this Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1332 because the conduct giving rise to the claims in this action occurred in the Premises located in the State of New York, County of New York, and because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.  Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

**400 Park Avenue**

7.  On or around August 9, 2002, CNB and Landlord entered into a lease pursuant to which CNB leased the Premises from Landlord (the "Lease").

8.  In subsequent years, CNB amended the Lease to include the seventh, eighth, and tenth floors of the Building to the Lease.

9. As CNB is a bank, it entered into the Lease with the intent of using it for general, executive and administrative office space in connection with its business of providing commercial and private banking services to the public.

10. In the same Building, at all relevant times, upon information and belief, Defendant Banco leased the fourteenth floor in connection with its banking business.

11. Donnelly, a contractor, installed and maintained the HVAC system in Banco's space on the fourteenth floor.

**The Water Leak**

12. On or before May 2, 2020, a water leak, emanating from the HVAC unit in the ceiling of the fourteenth floor of the Building, occurred in the Building.

13. On May 2, 2020, CNB discovered the leak and learned that water leaked into the Premises, namely into floors seven, eight, and ten, causing significant water damage and excess moisture.

14. The leak caused water damage to nearly 80-90% of the tenth floor.

15. The leak ruined CNB's walls, ceilings, floors, and furniture.

16. The same day that CNB discovered the leak, Landlord retained a drying equipment services company to provide fans and dehumidifiers in the affected areas of the Building.

17. On or about May 4, 2020, Hillmann Consulting ("Hillmann"), an environmental consulting and risk management company, conducted a moisture investigation of the Premises to determine the impact of the water intrusion from Banco's floor.  Hillmann confirmed what CNB feared—that there was extensive damage to CNB's property caused by the water leak.  *See* Hillmann Report, attached hereto as Exhibit A (includes photographs of the impacted areas).

18. Hillmann's investigation was professional and thorough. The investigation included a visual inspection and a moisture content survey in conjunction with thermal imagery to detect water damage or damage caused by moisture.

19. The investigation revealed "elevated moisture content" readings on wallboard walls from the floor to the ceiling in the pantry and conference room on the seventh floor and the wallboard walls from floor to ceiling in the conference room and offices on the eighth floor.

20. On the tenth floor, the investigation revealed more extensive damage. The investigation discovered that there was elevated moisture content readings on "wallboard ceilings, acoustic ceilings tiles, wood flooring, broadloom carpeting, and on wallboard walls from floor to ceiling."

21. The report detailed that the tenth floor reception area, conference room, and over a dozen offices (including the open cubicle areas near the offices) were impacted by the water leakage. The damage also impacted filing cabinets constructed of engineered wood. According to Hillmann, the water damage caused the cabinets to become "warped."

22. As a result of the extensive damage to the Premises, Hillmann recommended certain necessary remedial actions. The recommendations included that the wallboard walls and associated insulation be removed on the impacted floors, that wallboard ceiling, ceiling tiles, and flooring be removed from the impacted floors, that the duct insulation system be inspected, and all the materials on the floors be sampled for asbestos.

23. Notwithstanding the drying services provided by Landlord, and as evidenced by Hillman's investigation and report, CNB sustained significant damages from the water leak emanating from Banco's floor. Those damages totaled approximately $2.2 million.

**The Doctrine of *Res Ipsa Loquitur***

24. A fundamental concept in tort law is the doctrine of *res ipsa loquitur* ("*res ipsa*"). *Res ipsa* is a Latin phrase which is translated to mean "the things speaks for itself."

25. Plainly stated, *res ipsa* is an evidentiary principle that allows a trier of fact to infer negligence by the defendant, creating a rebuttable presumption of negligence by the defendant by recognizing that from everyday experience, some accidents by their very nature do not ordinarily happen without negligence.

26. The law recognizes the doctrine of *res ipsa* as creating a "permitted inference" that negligence can be "drawn from the circumstances of the incident" that the trier of fact may accept or reject.  *Horton v. Greenwich Hosp.*, 214 LEXIS 33161, at *7 (S.D.N.Y. 2014) (citations omitted).

27. To apply *res ipsa* to a case, the following conditions must be stated: "(1) the accident must be of a kind that ordinarily would not occur in the absence of negligence; (2) the injury must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the occurrence must not have been due to any voluntary action on the part of the plaintiff."  *Hairston v. Long Island R.R.*, 2003 U.S. Dist. LEXIS 9015, at * 10 (S.D.N.Y. 2003) (citing *Jesionowski v. Boston & Maine Railroad*, 329 U.S. 452, 456 (1947)).

28. *Res ipsa* may be invoked "even where more than one defendant is in control provided such defendants share a common duty toward the plaintiff."  *Helton v. Aviro Group Surveillance Solutions, Inc.*, 5 F. Supp. 3d 386, 402 (W.D.N.Y. 2013) (citing *Schroeder v. City & County Savings Bank of Albany*, 293 N.Y. 370 (N.Y. 1944) (explaining that defendants must explain their action and conduct which results in damage to another)).

29. *Res ipsa*, in its truest form, is exactly what we have here.

30. The water leak that occurred on Banco's floor, which caused extensive water damage to the floors below it, does not ordinarily occur in the absence of someone's negligence.

31. Banco and Donnelly, as the tenant and HVAC contractor, respectively, for the floor where the leak emanated from, were responsible for maintaining the fourteenth floor and the HVAC system on that floor, and were in exclusive control of that floor and that system.

32. CNB did not contribute, in any way, to the cause of the water leak from the fourteenth floor.

33. As a result of the *res ipsa* doctrine, a trier of fact can infer negligence against Banco and Donnelly for the damage caused to CNB by the water leak.

**Banco's Negligence in Connection with the Water Leak**

34. In May 2020, a water leak emanating from the fourteenth floor of the Building caused severe water damage to space leased by CNB. Specifically, floors seven, eight, and ten, and their contents, were severely damaged.

35. At all relevant times, upon information and belief, Banco leased the entirety of the fourteenth floor of the Building--the floor where the leak originated.

36. On August 20, 2020, Banco's insurance company, Travelers Insurance, admitted in a letter to CNB that "the plumbing leak originated from the insured space on [the] 14th floor in the ceiling" and the "plumbing that leaked services the insured's [Banco] cooling system for their computer server room."

37. The letter further provided that the HVAC system on the fourteenth floor was installed in 2016 and that the system was "regularly maintained by Donnelly Mechanical…".

38. Additionally, the letter notes that "Donnelly Mechanical installed the system [HVAC]" and that "the leak was due to a corroded pipe which was located within the ceiling of the insured's [Banco] space."

39. Because Banco leased the space, it had a duty to maintain the space and ensure that its HVAC system functioned properly and did not result in leaks.

**Donnelly's Negligence in Connection with the Water Leak**

40. As described above, CNB suffered significant water damage to the Premises caused by a water leak from the fourteenth floor of the Building.

41. Upon information and belief, Donnelly installed and maintained Banco's HVAC system.

42. Upon information and belief, Donnelly was responsible for the HVAC system at the time the leak occurred.

43. Upon information and belief, Donnelly caused the water damage to the Premises because it failed to properly maintain the HVAC system, resulting in a corroded pipe.

44. Donnelly's negligence in failing to maintain the HVAC system and failing to maintain the pipes caused CNB's damage.

**CNB Damages Caused by Defendants' Negligence**

45. Over the course of many months, CNB has sought to collect from Banco and/or from Donnelly for the damage caused to the Premises.

46. CNB has incurred at least $2.2 million in damages as a result of the water damage caused by Defendants.

47. Specifically, because of the extensive water damage, CNB was forced to repair and renovate the Premises. The repairs included costs for construction, furniture, security,

moving, storing, equipment, and managing. CNB seeks approximately $1.7 million for the aforesaid costs, an exact amount to be determined at trial

48. Additionally, for four and one-half months, from the date the damage occurred on May 2, 2020, until the completion of the repairs on September 2020, CNB paid hundreds of thousands of dollars in rent and operating expenses for space it could not use. CNB seeks approximately $482,265 for loss rent and operating expenses, an exact amount to be determined at trial.

49. CNB seeks reimbursement for the total costs associated with the water damage, inclusive of the repair and renovation costs and the four months of rent and operating expenses CNB paid during the time the Premises were being repaired and were unusable. The costs total at least $2.2 million, an exact amount to be proven at trial.

50. Banco and Donnelly are joint and severally liable for the harm caused to CNB and thus, both of them is responsible for the damages that CNB seeks to recover.

## **FIRST CAUSE OF ACTION**
**(Negligence as Against Banco)**

51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52. At all relevant times, CNB was the tenant of and occupied the seventh, eighth, and tenth floors of the Building located at 400 Park Avenue, New York, New York.

53. Upon information and belief, at all relevant times, Defendant Banco was and still is the tenant of and occupies the fourteenth floor of the Building located at 400 Park Avenue, New York, New York.

54. At all relevant times, Banco retained possession and control of all areas of the fourteenth floor and operated and maintained the fourteenth floor.

55. At all relevant times, Banco had a duty to maintain its floor in good repair.

56. Under the doctrine of *res ipsa*, a trier of fact can infer negligence against Banco for the water damage that emanated from its leased space on or before May 2, 2020.

57. Specifically, Banco caused the fourteenth floor to be in such a condition that it was unable to prevent water leakage from reaching the floors below it.

58. As a consequence of the condition of the fourteenth floor, CNB's property was severely damaged.

59. As a direct and proximate result of Banco's conduct, large amounts of water penetrated the walls, ceilings and floors, accumulated in space occupied by CNB, causing extensive damage and destroying most of CNB's property.

60. As a direct and proximate result of Banco's conduct, CNB was denied the use and enjoyment of its leased space for a period of four months, and was required to find and pay for repairs and renovations.

61. CNB's damages were caused by Banco's negligence.

62. As a direct and proximate result of Banco's negligence, CNB has been damaged in the sum of at least approximately $2.2 million, the exact amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Negligence as Against Donnelly)**

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 of the Complaint as if fully set forth herein.

64. Upon information and belief, at all relevant times, Defendant Donnelly was responsible for maintaining the HVAC system on the fourteenth floor of the Building.

65. At all relevant times, Donnelly had a duty to maintain the HVAC system and its pipes.

66. Under the doctrine of *res ipsa*, a trier of fact can infer negligence against Donnelly for the water damage that emanated from the HVAC system on or before May 2, 2020.

67. Specifically, Donnelly negligently caused the HVAC system to be in such a condition that it could not prevent water from leaking and from reaching the floors below.

68. Upon information and belief, Donnelly negligently let pipes within the HVAC system become corroded.

69. As a direct and proximate result of Donnelly's negligence, CNB has been damaged in the sum of at least approximately $2.2 million, the exact amount to be determined at trial.

**WHEREFORE,** Plaintiff requests this Court:

A. For judgment against Defendant Banco del Estado de Chile on count one in an amount to be determined at trial, but not less than $2,200,000.00;

B. For judgment against Defendant Donnelly Mechanical Corporation on count two in an amount to be determined at trial, but not less than $2,200,000.00;

C. For interest, costs, and disbursements of this Action, including Plaintiff CNB's reasonable attorneys' fees; and

D. For such other and further relief as may be just and proper.

Dated: New York, New York
April 19, 2021

DAVIS+GILBERT, LLP

By: */s/* Howard J. Rubin
Howard J. Rubin, Esq.
1675 Broadway
New York, New York 10019
(212) 468-4800
hrubin@dglaw.com
*Attorney for Plaintiff*